In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3300

CARLOS AVILA-RAMIREZ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A034-762-288

ARGUED APRIL 22, 2014 — DECIDED AUGUST 21, 2014

Before POSNER, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* An immigration judge found Carlos Avila-Ramirez "credible" and gave "full weight to his testimony" at a hearing requesting discretionary relief from removal. That testimony included Avila-Ramirez's denial that he had committed any underlying wrongdoing during the times he had been arrested or questioned since 1990. He was never convicted of any crimes resulting from those ar-

rests, and the police reports the government introduced at the hearing were uncorroborated. Yet the immigration judge and Board of Immigration Appeals relied on these uncorroborated arrest reports to find that Avila-Ramirez had failed to show "rehabilitation" after a 1990 conviction, and this failure was a significant factor in the decision to deny him discretionary relief from removal under former § 212(c) of the Immigration and Nationality Act. We conclude that in these circumstances, the BIA committed legal error by failing to follow its own binding precedent and giving substantial weight to an arrest report absent a conviction or corroborating evidence of the allegations contained therein. So we grant the petition for review.

## I. BACKGROUND

Carlos Avila-Ramirez, a citizen of Guatemala, was lawfully admitted to the United States as a permanent resident in 1977 when he was about seven years old. He has remained in the United States ever since. After three years of high school, he joined the United States Marine Corps. He later obtained his GED, then attended Solano Community College in California and received a certification to become an optical technician. Avila-Ramirez has been consistently employed as an adult. Most recently, he worked for a cable company in Chicago, earning $77,000 in the year preceding his immigration hearing.

At the time of the June 2012 removal hearing, Avila-Ramirez had been engaged to his fiancée, Gloria Espinosa, for about ten years. They live together in Chicago and also live with their son, who was born in 2003. Espinosa suffers from lupus and Sjögren's syndrome, both autoimmune disorders, as well as fibromyalgia. Although only thirty-three

years old at the time of Avila-Ramirez's hearing, these diseases had already rendered her unable to work. She receives $1,296 in Social Security disability benefits for herself and her son, as well as $150 in food stamps for her son.

Avila-Ramirez's income helps support Espinosa and their son. In addition, because one of Espinosa's main symptoms is fatigue, Avila-Ramirez usually cleans the house and cooks. Avila-Ramirez and Espinosa both expressed their intent to marry. Avila-Ramirez also testified that if he were deported, Espinosa and their son would probably remain in the United States because of Espinosa's medical needs.

Avila-Ramirez's mother, brother, sister, grandmother, and uncles also live in the United States. Avila-Ramirez's mother receives Supplemental Security Income and lives with her mother in Chicago, and his sister lives about an hour away. His brother is in the United States Army and is stationed in Central America. Although his mother earns some income working at a drug store, Avila-Ramirez helps support her financially. He also takes her places because she does not drive. Since Avila-Ramirez lives the closest of the children to his mother, he is also the one who would, for example, take her to the emergency room when she is ill. (His mother suffers from high blood pressure and hypertension.)

But Avila-Ramirez's time in the United States was certainly not unblemished. He was convicted in California in 1990 of inflicting corporal injury upon a spouse or cohabitant and sentenced to seventy-nine days in jail. A short while later, he received a bad conduct discharge from the military for writing bad checks and was sentenced to ninety days' incarceration. He testified before the immigration judge regarding the latter that he had written a check that hit the bank before his

pay did, and that he paid the money owed after money was deposited into his account.

Most significantly, later in 1990, Avila-Ramirez pled guilty in California state court to committing a lewd and lascivious act with a child under the age of fourteen. The victim was the daughter of his then-girlfriend. He received a sentence of six years' imprisonment for this crime. He also relinquished parental rights to his daughter, the victim's half-sister, as a result of the charge. He was paroled after three-and-a-half years in prison and moved to Chicago in 1993.

That 1990 conviction is the last time Avila-Ramirez was convicted of a crime. He has, however, been questioned or arrested multiple times since then. In 1995, Avila-Ramirez was arrested for aggravated stalking and violation of a restraining order. He denied any misconduct at the removal hearing, testifying that his then-girlfriend's mother had filed for the restraining order because she did not want the two of them to date, and that he was arrested for stalking after he knocked on the door. Later that year, Avila-Ramirez was questioned regarding theft of labor services and use of a stolen credit card. Avila-Ramirez testified before the immigration judge that the charges were dropped because "[he] didn't have anything to do with it."

In 2006, Avila-Ramirez was arrested for predatory criminal assault of a child. He was never charged, never required to appear in court after the arrest, and he denied any wrongdoing at the immigration hearing. Avila-Ramirez's mother testified that her sister was the one who had made the accusation, and that her sister falsely accuses people because she drinks. The next year, Avila-Ramirez was arrested for unlawful possession of a firearm. He testified to the im-

migration judge that he was pulled over for a traffic viola-
tion while giving a ride to Espinosa's brother, who is in a
gang. Avila-Ramirez testified that he gave the police consent
to search his car thinking he had nothing to hide, the police
found a gun underneath the seat, and that the gun belonged
to Espinosa's brother but Avila-Ramirez was charged be-
cause the car was registered in his name. The prosecutor did
not proceed with a case. The immigration judge noted that
the police report states that Avila-Ramirez told the police he
was carrying the gun for protection. The government intro-
duced no evidence corroborating any of the allegations or
arrest reports.

After hearing all the testimony, the immigration judge
found Avila-Ramirez credible and stated he gave Avila-
Ramirez's testimony "full weight." Nonetheless, the immi-
gration judge concluded that Avila-Ramirez's repeated ar-
rests meant he had not shown rehabilitation and denied Avi-
la-Ramirez's request for § 212(c) relief. While calling it a
"very close" case, the BIA affirmed, stating in part that "the
Immigration Judge found that [Avila-Ramirez's] recent sub-
sequent arrests show a lack of rehabilitation. We discern no
clear error in that finding."

## II. ANALYSIS

Avila-Ramirez petitions our court for review. Because the
BIA relied on the findings of the immigration judge and
added its own analysis, we review the immigration judge's
decision as supplemented by the BIA. *See Milanouic v. Holder*,
591 F.3d 566, 570 (7th Cir. 2010).

Avila-Ramirez concedes that he is eligible for removal
and seeks discretionary relief from removal under former

§ 212(c) of the Immigration and Nationality Act. Through the 1996 passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Congress repealed § 212(c) and replaced it with a narrower form of discretionary relief known as "cancellation of removal." *See United States v. Zambrano-Reyes*, 724 F.3d 761, 762 (7th Cir. 2013). A lawful permanent resident cannot receive cancellation of removal if he has an aggravated felony conviction, 8 U.S.C. § 1229b; *Gonzales-Gomez v. Achim*, 441 F.3d 532, 533 (7th Cir. 2006), and Avila-Ramirez does not contest the BIA's determination that his 1990 conviction for committing a lewd and lascivious act with a child under the age of fourteen was for an aggravated felony, s*ee* 8 U.S.C. § 1101(a)(43)(A) (including sexual abuse of a minor in aggravated felony definition).

But Avila-Ramirez is still statutorily eligible for § 212(c) relief. The Supreme Court held that, despite AEDPA and IIRIRA, § 212(c) relief is still available for persons "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *I.N.S. v. St. Cyr*, 533 U.S. 289, 326 (2001). Avila-Ramirez's guilty plea occurred in 1990, at a time when he would have been eligible for § 212(c) relief. So he is statutorily eligible for § 212(c) relief.

The next potential barrier to our review comes in the form of the REAL ID Act, which limits our review of certain BIA decisions. Invoking this statute, the government maintains that we lack jurisdiction to consider Avila-Ramirez's petition because it contends he is seeking review of a purely discretionary decision barred from our consideration by 8

U.S.C. § 1252(a)(2)(B). It is true that whether to grant § 212(c) relief is a matter of discretion. *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). In deciding whether to grant such relief, the immigration judge is to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf" to determine whether granting relief is in the best interests of the United States. *Id.* Favorable consideration include family ties within the United States, residence of long duration in the United States (especially when the residence began while the non-citizen was of young age), evidence of hardship to the applicant and family if deported, service in the United States Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to good character. *Id.* at 584-85. Adverse factors include the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability. *Id.* at 584.

But despite the bar in § 1252(a)(2)(B) on purely discretionary determinations, we retain jurisdiction to review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). "Legal questions include 'challenges to the BIA's interpretation of a statute, regulation, or constitutional provision, claims that the BIA misread its own precedent or applied the wrong legal standard, or claims that the BIA failed to exercise discretion at all.'" *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012) (citations omitted). By regu-

lation, the BIA is required when issuing a non-precedential decision to follow its own binding precedent. 8 C.F.R. § 1003.1(g) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board … shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States."). An argument that the BIA has exceeded the scope of review permissible under this regulation is a legal question for purposes of 8 U.S.C. § 1252(a)(2)(D) and therefore subject to our review. *Rosiles-Camarena v. Holder*, 735 F.3d 534, 536 (7th Cir. 2013). Avila-Ramirez asserts in his brief: "The Board ignored its own binding precedent in violation of federal law when it denied [his] petition for relief." More specifically, he maintains that the BIA's reliance on only uncorroborated arrest reports for which he denies any wrongdoing to determine whether he was "rehabilitated" ignored the BIA's precedential decision in *In re Catalina Arreguin De Rodriguez*, 21 I. & N. Dec. 38 (BIA 1995), and misread *Matter of Thomas*, 21 I. & N. Dec. 20 (BIA 1995). This is a question of law that we have jurisdiction to review. *See Rosiles-Camarena*, 735 F.3d at 536.

Rehabilitation can be an important factor in the § 212(c) analysis, as it was in this case. The Supreme Court has stated that a grant of relief will depend, in part, on "'evidence of either rehabilitation or recidivism,'" *Judalang v. Holder*, 132 S. Ct. 476, 481 (2011) (quoting *St. Cyr*, 533 U.S. at 296 n.5), and the immigration judge repeated that quotation in his decision here. In making his § 212(c) determination, the immigration judge found "significant favorable factors" in Avila-Ramirez's case. He also recognized that Avila-Ramirez and his family, including his fiancée and son, would "face con-

siderable hardships" if Avila-Ramirez were forced to leave. But the immigration judge found that Avila-Ramirez had a "lengthy arrest history" and convictions for serious crimes and had "not shown meaningful rehabilitation since his release from incarceration."

Yet the immigration judge also found Avila-Ramirez credible. And he did so in strong language, stating:

> Having reviewed [Avila-Ramirez's] testimony and documentary submissions, the Court finds his testimony to have been internally consistent and consistent with the documentary evidence in the record. Thus, the Court finds the respondent credible and will give full weight to his testimony.

Avila-Ramirez testified at the hearing that he did not commit any unlawful conduct before each of the arrests. In particular, Avila-Ramirez testified that his 1995 arrest for stalking and violating a restraining order occurred after his then-girlfriend's mother did not want her daughter to date him after learning about his 1990 conviction. He testified that his girlfriend's mother obtained a restraining order after he disclosed the conviction, and the mother called the police and alleged he was stalking her daughter when he came to knock on the door one day. The stalking charge and restraining order were dropped, and the government did not introduce any evidence at the removal hearing that corroborated the allegations in the police report.

Avila-Ramirez was also questioned in 1995 regarding credit card theft and "theft of labor services." Avila-Ramirez testified that he "didn't have anything to do with [the charg-

es]." These charges were also dropped, and the government offered no evidence in support of the claims. Avila-Ramirez was arrested in 2006 after his aunt accused him of having inappropriate contact with her granddaughter. He testified that his aunt, who was aware of Avila-Ramirez's 1990 conviction, had been drinking and made the accusation, but he stated that he had done nothing wrong. His mother also testified that her sister falsely accuses people when she drinks. No charges were ever brought.

Avila-Ramirez also denied that he had unlawfully possessed a firearm in 2007. He testified that he was driving Espinosa's brother when he was pulled over for a minor traffic infraction. Avila-Ramirez consented to a search of his car because, he testified, he didn't have anything to hide. He testified that the gun the police found in his car belonged to Espinosa's brother but that Avila-Ramirez was charged because it was his car.

So Avila-Ramirez denied committing any unlawful conduct in the events leading to his arrests or questioning after 1990. The immigration judge found Avila-Ramirez credible and gave his testimony full weight, and that testimony included denying the underlying conduct. But the judge, affirmed by the BIA, also found that the arrests and questioning showed a lack of rehabilitation. The judge further stated that Avila-Ramirez told the court he had rehabilitated himself, "but these repeated arrests" show otherwise. Finding Avila-Ramirez's testimony fully credible and also finding that his arrests evidenced a lack of rehabilitation are seemingly contradictory findings.

And the agency found a lack of rehabilitation based on nothing more than uncorroborated police reports. Nonethe-

less, the government maintains that the BIA did not fail to follow its own precedent. The only decision the agency referenced regarding rehabilitation, *Matter of Thomas*, 21 I. & N. Dec. 20 (BIA 1995), does not authorize its ruling here. In *Matter of Thomas*, the BIA held that the immigration judge could consider the applicant's convictions in the exercise of discretion even though the convictions were not yet final. *Id.* at 25. The BIA explained: "Although the respondent's convictions are not yet final, we find the fact that he has been so convicted, whether by jury trial or upon his own plea of guilty, to constitute significant evidence that he has committed the crimes of which he has been found guilty." *Id.* Avila-Ramirez, on the other hand, was not convicted after any of the arrests at issue. There is no "significant evidence" that he committed any crimes after 1990; he denied that he did the conduct alleged in police reports, and he was never convicted after that date.

*Thomas* does include the language: "In examining the presence of adverse factors on an application for discretionary relief, this Board has found it appropriate to consider evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction for purposes of the Act." *Id.* at 23. But the cases the BIA cited in support of this proposition make sense, and none involved only uncorroborated police reports. Some, for example, involved guilty pleas or other admissions. *Matter of Seda*, 17 I. & N. Dec. 550 (BIA 1980) (guilty plea); *White v. I.N.S.*, 17 F.3d 475 (1st Cir. 1994) (guilty plea); *Paredes-Urrestarazu v. I.N.S.*, 36 F.3d 801 (9th Cir. 1994) (pre-trial diversion where defendant initially testified that friend told him he had drugs for sale); *Parcham v. I.N.S.*, 769 F.2d 1001 (4th Cir. 1985) (acknowledgment of participation in "violent demonstration" corroborated pend-

ing arson charges arising out of demonstration). Others concerned convictions with a judicial recommendation against deportation. *Matter of Gonzalez*, 16 I. & N. Dec. 134 (BIA 1977); *Oviawe v. I.N.S.*, 853 F.2d 1428 (7th Cir. 1988); *Giambanco v. I.N.S.*, 531 F.2d 141 (3d Cir. 1976). Another case involved a conviction that had been expunged. *Villanueva-Franco v. I.N.S.*, 802 F.2d 327 (9th Cir. 1986). In short, all of the cases the BIA discussed in *Matter of Thomas* involved some corroboration beyond a mere arrest report. Save one, that is, and it is the one most relevant to our circumstances. *Matter of Thomas* cited favorably to *Sierra-Reyes v. I.N.S.*, 585 F.2d 762, 764 n.3 (5th Cir. 1978), which the BIA described as "stating that police reports implicating respondent in criminal activity but which never resulted in prosecution due to a lack of sufficient evidence were not probative." *Matter of Thomas*, 21 I. & N. Dec. at 24-25. That is what we have here: only uncorroborated police reports.

Soon after its decision in *Matter of Thomas*, the BIA considered the weight that could be given to uncorroborated arrest reports in a § 212(c) discretionary relief determination. But neither the BIA nor the immigration judge cited or discussed the BIA's precedential decision in *In re Catalina Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (BIA 1995). As a precedential decision, it is binding on the agency when it issues a non-precedential decision such as the one in this case. *See* 8 C.F.R. § 1003.1(g). In *Arreguin*, the applicant in her testimony before the immigration court denied any wrongdoing regarding the conduct described in an arrest report. Nonetheless, an immigration judge denied the request for § 212(c) relief after considering the arrest report and finding it to be a negative factor. The BIA reversed and explained:

> The Immigration Judge concluded that this incident was a negative factor to be considered in exercising discretion. Just as we will not go behind a record of conviction to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight.

21 I. & N. Dec. at 42. The BIA then weighed the favorable and negative facts in the record and found § 212(c) relief warranted. *Id.* at 42-43.

The Sixth Circuit ruled that *Arreguin* meant an immigration judge erred by denying relief based on uncorroborated arrest reports. *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 713 (6th Cir. 2004). After finding the facts before it "materially the same" to those in *Arreguin*, the court ruled that although the immigration judge was concerned that the petitioner "had a history of sexually abusing young children, he was not convicted of any such crime, denied committing such a crime, and was confronted with no independent evidence suggesting otherwise." *Id.* at 712. The court held that the BIA's "failure to follow its precedent" in *Arreguin* when it relied on uncorroborated arrest reports to deny discretionary relief was a legal error that subjected the petitioner to substantial prejudice. *Id.* at 713. As a result, the court remanded the case to

the BIA with instructions not to consider the reports. *Id.*; *cf. Padmore v. Holder*, 609 F.3d 62, 69 (2d Cir. 2010) (noting concern with "the BIA's apparent willingness to accept unproven and disputed allegations as true merely because they exist in the record").

Here too, as in *Arreguin*, Avila-Ramirez acknowledged that arrests and questioning took place after 1990, but admitted to no wrongdoing. Avila-Ramirez was not prosecuted or convicted after these arrests, and there was no corroboration introduced at the immigration hearing. Yet the immigration judge and the BIA gave the arrest reports significant weight. That significant weight was given is clear, as the immigration judge found many factors in Avila-Ramirez's favor but concluded he had not shown meaningful rehabilitation since his release from incarceration. That lack of rehabilitation finding can only be based on the uncorroborated arrests, as there is no other potentially negative factor in the record. Other points in the decision reinforce the weight placed on the uncorroborated arrests. Regarding Avila-Ramirez's 1995 questioning for a financial crime, the immigration judge noted that although the charge was dropped, it "cast doubt" on whether he had "learned from his mistake the first time" of writing bad checks. The immigration judge also remarked that Avila-Ramirez's "repeated aggressive displays toward significant others [was] cause for concern." But Avila-Ramirez only had one conviction in this regard, in 1990; the "repeated" reference was to a 1995 arrest where Avila-Ramirez denied any wrongdoing.

The BIA's failure to follow its own binding precedent was not harmless. *Cf. Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007) (stating doctrine of harmless error applies to judicial

review of immigration decisions). In addition to the weight given the arrests in the immigration judge's decision, the BIA characterized Avila-Ramirez's case as a "very close" one even when considering the arrest reports and stated that Avila-Ramirez had "substantial equities." The arrest reports seemed to be the decisive factor in the BIA's decision; absent the reports, there would be no basis in the record for the agency's conclusion that Avila-Ramirez had not shown rehabilitation.

To be clear, this is not to say that we read *Arreguin* to prohibit any consideration of arrest reports in the weighing of discretionary factors. *See Arreguin*, 21 I. & N. Dec. at 42 (giving "little weight" to arrest report); *Sorcia v. Holder*, 643 F.3d 117, 126 (4th Cir. 2011) (stating that *Arreguin* "did not indicate that it was *per se* improper to consider an arrest report" and declining to vacate decision where BIA gave "little weight" to arrest report). Here, however, we find that the agency failed to follow its binding precedent in *Arreguin*, which it did not cite, when it gave significant weight to uncorroborated arrest reports in which Avila-Ramirez denied any wrongdoing after finding him credible. *See Margulis v. Holder*, 725 F.3d 785, 788 (7th Cir. 2013) ("The Board can reexamine, and if it wants overrule, a precedent, but it didn't do that in this case. It ignored it. This is not permissible."). As a result, we grant the petition for review and return Avila-Ramirez's case to the BIA for additional consideration.

## III. CONCLUSION

The petition for review is GRANTED and this case is returned to the BIA for further proceedings consistent with this opinion.