**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3333
_____

ERSIN DOYDUK,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency Case No. A201-112-403)
Immigration Judge: R.K. Malloy
_____

Argued
October 18, 2022
_____

Before: GREENAWAY, JR., MATEY, and ROTH, *Circuit Judges*.

(Filed: April 14, 2023)

John P. Leschak **[ARGUED]**
Leschak & Associates
180 South Street
Freehold, NJ 07728
    *Counsel for Petitioner*

Merrick B. Garland
Erik R. Quick
Jonathan A. Robbins **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge*.

An expungement order eliminates the legal record of an event, but it does not erase history. Ersin Doyduk is a citizen of Turkey who overstayed his visa. He asked for an adjustment of status, but an Immigration Judge ("IJ") denied his application, citing facts surrounding Doyduk's involvement in a stabbing. Error, Doyduk argues, because those facts appeared in an expunged criminal complaint. But the language of the Immigration and Nationality Act ("INA") allows IJs to consider facts underlying expunged charges. So we will deny the petition.

# I.

Doyduk came to the United States from Turkey on a visa that expired in 2010. Still in the country a year later, he took part in a night of heavy drinking with his then-girlfriend Nadezdah Filipova (who was also in the country without authorization). Later that night, Filipova was stabbed in the stomach, suffering a serious injury. Panicked, Doyduk called his boss, Murat Coskun, asking him to come to the apartment. Coskun arrived and called 911. Police responded and arrested Doyduk. The Commonwealth of Pennsylvania charged him with five criminal offenses: aggravated assault, possessing an instrument of crime, possessing a prohibited offensive weapon, simple assault, and recklessly endangering another person. But all the charges were withdrawn after Filipova and Coskun refused to testify. And the charging documents were eventually discarded under a Pennsylvania law that requires expungement after eighteen months pass without action. *See* 18 Pa. C.S. § 9122(a)(1).

The Department of Homeland Security initiated removal proceedings against Doyduk in 2011, charging him with removability under 8 U.S.C. § 1227(a)(1)(C)(i) for having overstayed his visa. In 2012, Doyduk conceded removability but began seeking an adjustment of status based on his marriage to a United States citizen. A hearing on his adjustment application was held in 2017, at which Detective Andrew Jackson (the officer who arrested Doyduk) testified.

According to his testimony, Detective Jackson responded to Coskun's 911 call and found Doyduk's apartment in disarray, with Filipova lying in the bathroom bleeding from her stomach. He observed blood throughout the home and on a small paring knife in the kitchen sink. Detective Jackson

3

recalled Doyduk wearing a bloody shirt. He also noticed scratches on Doyduk's neck that Doyduk could not explain. Detective Jackson added that Filipova first told him that Doyduk stabbed her by accident, then that she accidentally stabbed herself. Finally, Detective Jackson testified that Coskun said Doyduk called him in a panic saying he "went crazy and put a knife in her." A.R. 81.

The IJ also considered the Philadelphia Police Department's investigation report ("police report") and heard testimony from Doyduk, his citizen-wife, and others attesting to Doyduk's character. Balancing the factors favoring and opposing discretionary adjustment of Doyduk's status, the IJ "weigh[ed] heavily the facts and circumstances of [Doyduk's] arrest" and denied relief, finding that "[t]he evidence in the record strongly suggests that Respondent committed the crime for which he was arrested" and that Doyduk "did not convince the Court otherwise." A.R. 91. The Board of Immigration Appeals summarily affirmed on December 1, 2021, and Doyduk timely petitioned for review.[1]

---

[1] The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. Where, as here, the BIA summarily affirms, we treat the IJ's decision as the final administrative determination. *See Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law de novo. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). Otherwise, we lack jurisdiction to review "any judgment regarding the granting of relief" about adjustment of status, 8 U.S.C. § 1252(a)(2)(B)(i), including "review of factual findings that underlie a denial of relief." *Patel v. Garland*, 142 S. Ct. 1614, 1618 (2022). Doyduk's arguments call on us to

4

## II.

The IJ denied Doyduk's adjustment application, finding "that the facts and circumstances surrounding [Doyduk's] arrest present serious adverse factors that work against a favorable exercise of discretion." A.R. 87. Doyduk argues that was reversible error because those "facts and circumstances" included expunged criminal charges.[2] But that restriction on the IJ's discretion finds no footing in the text of the INA, precedent, state law, or the Constitution. So we will deny his petition.

### A. The Immigration and Nationality Act

As usual, we turn to the text of the statute reading the words as "generally . . . understood in their usual and most

---

review questions of law rather than revisit the IJ's factual determinations.

[2] The Government argues that Doyduk did not exhaust this issue, but we see sufficient notice in the record. At his adjustment hearing, Doyduk's counsel mentioned "expungement law" and discussed caselaw holding IJs cannot consider unsupported allegations in a police report. A.R. 214. The Government referenced the relevant expungement law, Pa. C.S. § 9122, by name, A.R. 152, and the IJ repeatedly acknowledged that the issue of expungement could be pursued on appeal. A.R. 212–15. Doyduk's Notice of Appeal raised this issue before the BIA, challenging the IJ's use of "evidence regarding an expunged criminal matter." A.R. 52. All enough to "place the Board on notice of a straightforward issue being raised on appeal" and exhaust administrative remedies. *Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006) (quoting *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005)).

known signification." 1 William Blackstone, Commentaries *59 (George Sharswood ed., 1875). *See also United States v. Fisher*, 6 U.S. (2 Cranch) 358, 385 (1805) (Marshall, C.J.) ("That these words taken in their natural and usual sense, would embrace the case before the court, seems not to be controverted."); *Khan v. Att'y Gen.*, 979 F.3d 193, 197 (3d Cir. 2020). Section 245(a) of the INA states that "[t]he status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a).[3] When Congress extended the Attorney General this authority,[4] "discretion" generally meant the "[p]ower or privilege of the court to act unhampered by legal rule." Black's Law Dictionary 553 (4th ed. 1951). Though in the specific context of judicial or legal discretion, the term had a narrower meaning, one "bounded by the rules and principles of law, and not arbitrary, capricious, or unrestrained." *Id.* Put another way, discretion meant "[t]he range within which any

---

[3] The Attorney General has delegated his discretion under § 245 to Immigration Judges. *See* 8 C.F.R. § 1003.10(a) ("Immigration judges shall act as the Attorney General's delegates in the cases that come before them.").

[4] *See* Immigration and Nationality Act, Pub. L. No. 414, § 245(a), 66 Stat. 163, 217 (1952) ("The status of an alien . . . may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) . . . ."). The current standard followed from that language in 1958. *See* Act of Aug. 21, 1958, Pub. L. No. 85-700, 72 Stat. 699 ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . . .").

person or body may act or decide without violating any legal obligation to act or refrain from acting." Max Radin, Law Dictionary 96 (1955).[5]

Here, "[n]either the language of the statute nor the relevant regulations establish criteria by which to weigh applications for discretionary relief," nor do they specify the types of evidence an IJ may consider. *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994).[6] All meaning the best ordinary reading of § 245(a) does not forbid IJs from considering facts underlying expunged charges. *See United States v. Smukler*, 991 F.3d 472, 476 (3d Cir. 2021) ("[W]e look to the whole text of a law to best 'interpret the words consistent with their ordinary meaning . . . at the time Congress enacted the statute.'" (quoting *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018))). If some limit applies, it must come from an independent "legal obligation," Radin, *supra*, at 96. Doyduk

---

[5] A meaning that has remained consistent since the 1950s. *See, e.g.*, Black's Law Dictionary 585 (11th ed. 2019) ("Freedom in the exercise of judgment; the power of free decision-making.").

[6] The Attorney General may cabin this broad discretion through regulations. 8 U.S.C. § 1255. The Attorney General has used that authority to explain which aliens are eligible to apply for an adjustment of status, 8 C.F.R. § 245.1, and create special standards for victims of human trafficking and certain other crimes, *id.* § 245.23–.24. But those regulations merely incorporate the factors announced in cases like *Matter of Arai*, 13 I. & N. Dec. 494, 496 (BIA 1970) and *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). *See* 8 C.F.R. §§ 245.23(e)(3), 245.24(d)(11). And none prohibit IJs from considering facts underlying expunged charges.

7

offers two from caselaw and state law, but as we explain, neither will do.[7]

**B.    Precedent**

Starting in 1970, the BIA announced a list of "adverse" and "favorable" factors to guide the "exercise of administrative discretion" in status adjustments. *Matter of Arai*, 13 I. & N. Dec. 494, 496 (BIA 1970). The Board elaborated on these factors a few years later in *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978), but status adjustments remained "a

---

[7] Doyduk also suggests the IJ violated his procedural and substantive due process rights, but we are unpersuaded. Doyduk never asserted any protected liberty or property interest, which is required "for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006). And even though we have recognized a limited "procedural due process right" for aliens lacking a protected liberty or property interest, Doyduk does not dispute that he received: "(1) [a] factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his [or her] interests." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 384 (3d Cir. 2020) (quoting *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017)) (quotation marks omitted). Doyduk's substantive due process argument similarly lacks merit because Doyduk has no constitutional right to an expungement. *Cf., e.g.*, *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009) ("[W]e reject Nunez's contention that New Jersey law itself creates a constitutional right of privacy in an expunged criminal record.").

matter of administrative grace." *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3d Cir. 1971).

Exercising this discretion involves determining the kinds of evidence an IJ may consider, an issue the BIA has also addressed. *See In re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42–43 (BIA 1995). In *Arreguin*, the BIA reversed an IJ's denial of discretionary relief in part because the IJ credited a prior incident memorialized only by an arrest report noting that prosecution was declined. *Id.* While the IJ found the incident "a negative factor to be considered in exercising discretion," the BIA "hesita[ted] to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein." *Id.* at 42. So in its re-weighing of the positive and negative factors, the BIA gave "the [arrest] report little weight." *Id.*

Doyduk argues the IJ departed from *Arreguin* by giving substantial weight to the police report of Filipova's stabbing. We disagree. At most, *Arreguin* holds that arrest reports are entitled to "little weight" "absent a conviction or corroborating evidence of the allegations contained therein." *Id.* When arrest reports lack independent corroboration, IJs should be "hesitant" to credit them with "substantial weight" in an equitable balancing analysis. *Id.* That is a sliding scale, not a categorical ban.[8]

---

[8] A conclusion shared by every other circuit to consider the question. *See Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) ("*Arreguin* . . . surely does not create an ironclad rule that an arrest without a subsequent conviction may never be considered in the discretionary relief context."); *Sorcia v. Holder*, 643 F.3d 117, 126 (4th Cir. 2011) ("*Arreguin* did not

*Arreguin* lacks force here because the allegations in the police report are corroborated by 1) pictures of Filipova's wound and the scene where the stabbing occurred, 2) Detective Jackson's testimony and cross-examination at the adjustment hearing, 3) hospital records of Filipova's treatment for a stab wound, 4) Doyduk's admission that he blacked out from inebriation the morning of the stabbing and that a restraining order was entered after the events, and 5) Coskun's statement to Detective Jackson that Doyduk called him in a panic saying he "went crazy and put a knife in [Filipova]." A.R. 81, 690. We see no basis to extend *Arreguin* beyond its holding, particularly where the IJ merely determined that Doyduk was not entitled to discretionary relief based on detailed and corroborated evidence suggesting bad moral character. That determination falls within the authority given by Congress and follows BIA precedent.

Doyduk also points to *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006) and *Pinho v. Gonzales*, 432 F.3d 193 (3d Cir. 2005). But these cases analyze the threshold issue of whether a vacated conviction still counts for purposes of adjustment-of-status eligibility. They offer no insight on the kinds of evidence an IJ may (or may not) consider when

indicate that it was per se improper to consider an arrest report."); *cf. also Avila-Ramirez v. Holder*, 764 F.3d 717, 719–20 (7th Cir. 2014) (rejecting IJ's reliance on arrest reports where "[t]he government introduced no evidence corroborating any of the allegations or arrest reports"); *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 709, 712 (6th Cir. 2004) (rejecting IJ's reliance on dismissed criminal charges that never led to a conviction and lacked "independent evidence suggesting" illegal activity).

10

determining how to exercise discretion. The IJ found Doyduk "statutorily eligible to adjust his status to that of a lawful permanent resident" because Doyduk "was never convicted of any criminal offense after his May 24, 2011 arrest." A.R. 87. That threshold determination takes Doyduk's application outside of *Pickering* and *Pinho*. As we emphasized in *Pinho*, "the decision whether in fact to *grant* adjustment of status is a matter entrusted to the discretion of the agency, and we lack the power to review denials of adjustment applications as such." 432 F.3d at 216.

## C.    Pennsylvania's Expungement Statute

Doyduk finally argues that Pennsylvania's expungement statute, the Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S. §§ 9101–9183, creates a state law privacy interest that bars federal IJs from considering not only expunged criminal charges, but also the underlying incident itself. By considering facts surrounding the stabbing incident—Doyduk's own testimony, the police report, and Detective Jackson's testimony—Doyduk suggests the IJ violated his right to keep that information private. We are unpersuaded that CHRIA sweeps so far.

CHRIA states that "an individual may not be required or requested to disclose information about the individual's criminal history record that has been expunged . . . ." 18 Pa. C.S. § 9122.5(a)(1). This disclosure provision allows Doyduk to rebuff inquiries into his expunged criminal history record. If asked, he can remain silent or "respond as if the offense did not occur." *Id.*

Doyduk cannot, however, use the disclosure provision to silence others from divulging information related to his

11

expunged charges. CHRIA narrowly says that "*an individual* may not be required or requested to disclose information about *the individual's* criminal history record that has been expunged." *Id.* (emphases added). The definite article in "the individual" is key, "an article coupled with a singular noun" that points to a discrete person: the individual with the expunged criminal history. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1483 (2021). *See also* The Chicago Manual of Style § 5.70, at 249 (17th ed. 2017) ("An article is a limiting adjective that precedes a noun or noun phrase and determines its use to indicate something definite (*the*) or indefinite (*a* or *an*)."). That definite article tells the reader what information "an individual may not be required or requested to disclose": "information about the individual's" own expunged record. 18 Pa. C.S. § 9122.5(a)(1). Requests for information about some other person's record fall beyond the provision.

Doyduk did not elect to remain silent, choosing instead to testify at length about the incident. And even if he had, the IJ still could have considered the police report and Detective Jackson's testimony because neither of those information sources came from Doyduk. *See id.* § 9122.5(a)(1). So the IJ lawfully considered the facts underlying Doyduk's expunged charges.

## III.

Because considering the evidence underlying Doyduk's expunged charges fell within the IJ's broad discretion, we will deny the petition.

12